IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jonathan Banks, | : | |
| Petitioner | : | |
| | : | No. 1365 C.D. 2016 |
| v. | : | |
| | : | Submitted: March 3, 2017 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                        FILED: May 17, 2017


          Jonathan Banks (Petitioner) petitions, *pro se*, for review from the July 20, 2016 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision to dismiss Petitioner's appeal as untimely.


**Facts and Procedural History**

          Petitioner worked full-time as a Patient Transport for Crothall Healthcare (Employer) from September 1, 2002, until his last day of employment on March 1, 2016. By letter dated March 4, 2016, Petitioner was discharged for violating Employer's policy prohibiting excessive tardiness. (Certified Record (C.R.) at No. 2-3.)

Petitioner applied for unemployment compensation benefits with the local service center, which determined that Petitioner was able and available for suitable employment pursuant to section 401(d)(1) of the Unemployment Compensation Law (Law),[1] but also determined that Petitioner was ineligible for benefits under section 402(e) of the Law[2] because he violated Employer's tardiness policy without establishing good cause for the same. Accordingly, the local service center determined that Petitioner was ineligible for benefits because the disqualifying section takes precedence over the eligibility section and, in its notice of determination, advised Petitioner that the last day to appeal its decision was May 20, 2016. (C.R. at No. 4.)

On May 27, 2016, Petitioner appealed the local service center's decision, asserting that he never received the notice of determination because it got lost in the mail. A hearing was scheduled before a referee. (C.R. at Nos. 5, 7.)

At the hearing, Petitioner testified that the mailing address where the notice was sent was accurate, but stated that he never received the same. Petitioner explained that the notice may have been delivered to his neighbor's address because his neighbor's mail was once delivered to his address. According to Petitioner, he contacted the local service center to inquire about the status of his benefits and was advised that the notice had been sent to his address. Petitioner testified that the local service center sent him another notice after the call and he filed an appeal

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §801(d)(1). Section 401(d)(1) of the Law states that a claimant is eligible for benefits only if he "[i]s able to work and available for suitable work." *Id.*

[2] 42 P.S. §802(e). Section 402(e) of the Law provides that a claimant "shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to discharge or temporary suspension from work for willful misconduct connected with his work . . . ." *Id.*

immediately after receipt of the same. Petitioner noted that he lives with his father and explained that his father would have given him the notice if it had been delivered. (Notes of Testimony at 3-4.)

By decision mailed June 21, 2016, the referee dismissed Petitioner's appeal as untimely. The referee stated that Petitioner's testimony, without corroborating evidence, was insufficient to establish that his late appeal should be considered timely. The referee specifically found that the record contained no evidence that the notice was returned to the local service center as undeliverable, nor did the record contain any evidence indicating that the local service center misled or misinformed Petitioner regarding his appeal rights. Accordingly, the referee determined that a strict application of the mandatory fifteen-day appeal period indicates that Petitioner's appeal was untimely.

Petitioner appealed the referee's decision to the Board, which adopted the referee's findings and conclusions and affirmed the referee's decision. Petitioner appealed that determination to this Court.

On appeal,[3] Petitioner largely challenges the merits of the determination that he is ineligible for compensation benefits. Specifically, Petitioner asserts that he had good cause for violating Employer's policy because he was suffering from post-traumatic stress disorder related to recent tragic events in his life. Regarding the timeliness of his appeal, Petitioner concedes in his appellate brief that "[his] father is

---

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. *Torres-Bobe v. Unemployment Compensation Board of Review*, 125 A.3d 122, 126 n.3 (Pa. Cmwlth. 2015).

3

the person who's first to get the mail and without [Petitioner's] knowledge the letter was placed with previous mail . . . ." (Petitioner's brief at 9.)[4]

**Discussion**

Section 101.82 of the Board's regulations provides that "[a] party seeking to appeal a Department determination shall file an appeal . . . on or before the 15th day after the date on which notification of the decision of was . . . mailed to him at his last known post office address." 34 Pa. Code §101.82. "Where notice, mailed to a party's last known address, is not returned by the postal authorities as undeliverable, the party is presumed to have received notice." *John Kenneth, Ltd. v. Unemployment Compensation Board of Review*, 444 A.2d 824, 826 (Pa. Cmwlth. 1982). "[T]he fifteen-day time limit for filing an appeal from a Department determination is mandatory." *Suber v. Unemployment Compensation Board of Review*, 126 A.3d 410, 412 (Pa. Cmwlth. 2015).

"An appeal *nunc pro tunc* may be permitted when a delay in filing the appeal is caused by extraordinary circumstances involving fraud, administrative breakdown, or non-negligent conduct, either by a third party or by the appellant." *Suber*, 126 A.3d at 412 (citing *Mountain Home Beagle Media v. Unemployment Compensation Board of Review*, 955 A.2d 484, 487 (Pa. Cmwlth. 2008)); *see also Greene v. Unemployment Compensation Board of Review*, __ A.3d __ (Pa. Cmwlth., No. 2750 C.D. 2015, filed March 10, 2017) (holding that administrative breakdown must involve the right to or necessity for filing an appeal to warrant *nunc pro tunc*

---

[4] "A party's statement in its brief is treated as a judicial admission, which, although not evidence, has the effect of withdrawing a particular fact from issue." *Ciamaichelo v. Independence Blue Cross*, 928 A.2d 407, 413 (Pa. Cmwlth.2007).

relief). "[F]iling deadlines should be strictly enforced and . . . any exception to this principle should be narrowly construed." *Vereb v. Unemployment Compensation Board of Review*, 676 A.2d 1290, 1294 (Pa. Cmwlth. 1996). "The burden to justify an untimely appeal is heavy." *Suber*, 126 A.3d at 412.

While this Court is sympathetic to the tragedies Petitioner has experienced, Petitioner's challenge is limited to his receipt of the notice of determination. Here, the referee specifically found that the notice was sent to Petitioner's last known address and the record contains no evidence that the notice was returned as undeliverable. Petitioner did not challenge those findings on appeal. Unchallenged findings are conclusive on appeal and are binding on this Court. *Munski v. Unemployment Compensation Board of Review*, 29 A.3d 133, 137 (Pa. Cmwlth. 2011). As such, Petitioner is presumed to have received the notice. *John Kenneth*, 444 A.3d at 826. Additionally, although Petitioner testified before the referee that he did not receive the local service center's notice of determination, he conceded in his appellate brief that his father had erroneously placed the notice in Petitioner's previous mail. Therefore, the only issue before this Court is whether Petitioner is entitled to *nunc pro tunc* relief.

As the referee expressly found, the record contains no evidence indicating that Petitioner was misled or misinformed regarding his appeal rights, nor does the record contain any evidence suggesting that a breakdown in the administrative process occurred. Without such extraordinary circumstances, Petitioner is unable to satisfy his heavy burden of justifying a *nunc pro tunc* appeal.

Accordingly, the Board's order must be affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

5

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Banks,                           :
                Petitioner        :
                                       :   No.  1365 C.D. 2016
        v.                        :
                                       :
Unemployment Compensation                  :
Board of Review,                           :
                Respondent        :

## ***ORDER***

AND NOW, this 17th day of May, 2017, the July 20, 2016 order of the Unemployment Compensation Board of Review is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Banks,                          :
                    Petitioner           :
                                         :
         v.                              :  No. 1365 C.D. 2016
                                         :  Submitted: March 3, 2017
Unemployment Compensation                :
Board of Review,                         :
                    Respondent           :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

CONCURRING OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED: May 17, 2017

         Jonathan Banks (Claimant) testified at the Referee's hearing that he
did not receive his mailed copy of the notice of determination before the appeal
deadline. Claimant's concession in his appellate brief that his father misplaced the
notice of determination forecloses *nunc pro tunc* relief. Thus, I concur in the result
reached by the majority. I write separately because I disagree with the Referee's
understanding of the mailbox rule.

         The mailbox rule is an evidentiary presumption. It provides that
"proof that a letter was properly mailed raises a rebuttable presumption that the
letter was received." *Donegal Mutual Insurance Co. v. Insurance Department*, 719
A.2d 825, 827 (Pa. Cmwlth. 1998). In *Donegal*, the Insurance Commissioner held
that because policyholders never received their insurer's notice of cancellation of
their homeowners' policy, their coverage did not terminate. On appeal, the insurer
challenged the Insurance Commissioner's application of the mailbox rule. The
Commissioner found that the insurer's evidence established that it had mailed the

notices, thereby entitling it to the rebuttable presumption that its notices had been received by the policyholders. However, the Commissioner then found that the policyholders successfully rebutted the presumption "by credibly denying receipt of the notice." *Id.* at 827. In addition, the policyholders presented the testimony of "a disinterested third party," who also credibly testified that he did not receive the notice, even though his company was shown as having also been sent the notice. *Id.* In an aside, the Insurance Commissioner observed that had the insurer presented testimony that its mailings had not been returned, that testimony could have strengthened the presumption. This Court affirmed the Commissioner's adjudication, citing *Jensen v. McCorkell*, 26 A. 366 (Pa. 1893) (noting that other evidence can strengthen a presumption).

Here, the Referee declaimed that testimony is always insufficient to rebut the mailbox rule presumption where the records of the UC Service Center do not show that its mailing was returned as undeliverable.[1] In this way the Referee sidestepped the need to make a credibility determination. There are several problems with the Referee's position.

First, there is no foundation for the Referee's finding that the UC Service Center's mailing to Claimant was not returned. Apparently, the file forwarded to the Referee by the UC Service Center did not include the notice sent to Claimant returned by the Postal Service as undeliverable. The Referee simply inferred, based on the absence of evidence, that the notice was not returned.[2]

---

[1] The Board gave the Referee's statement its imprimatur by adopting the Referee's findings and conclusions as its own.

[2] The absence of evidence, or "negative evidence," cannot support a positive factual finding. *Yi v. State Board of Veterinary Medicine*, 960 A.2d 864, 874 (Pa. Cmwlth. 2008). In *Yi*, a licensing board exercised its discretion to reject all witness testimony, leaving it without any positive **(Footnote continued on the next page . . . )**

There was no foundation for the Referee's inference. No one from the UC Service Center testified about how claimant files are created or maintained or offered any evidence to eliminate the possibility, for example, that the UC Service Center misfiled the returned mailing.

Second, *Donegal* established that testimony alone can rebut the mailbox rule presumption. Indeed, it is difficult to posit what other evidence can be used to prove a negative, *i.e.*, lack of receipt of a mailing.[3]

The Referee concluded that Claimant's "[t]estimony of not having received the [n]otice of [d]etermination in a timely manner, without any other corroborating evidence as to what happened to the [n]otice of [d]etermination, is insufficient to establish that a late appeal should be [allowed]." Referee Decision at 2. The Referee believes it is always the claimant's responsibility to explain "what happened" to the notice he did not receive.

I reject this adamantine rule, which appears to be based on a misunderstanding of *Donegal*. Unless there are circumstances where corroboration is easily obtainable, testimony alone, if found credible, should be sufficient to rebut the mailbox rule presumption. It is absurd that a referee must disallow a *nunc pro tunc* appeal where the referee believes the claimant's denial of receipt. If the mailbox rule presumption cannot be rebutted by a credible denial, then it becomes

---

**(continued . . . )**
evidence to support its finding that a veterinarian did not perform a physical examination. We held that "[t]he remaining 'evidence' consists solely of a negative inference from a statement not found credible. This is ephemeral, not substantial, evidence, which, at best, supports a suspicion." *Id.* at 875.

[3] The Referee requires someone in Claimant's position to prove a negative proposition, *i.e.*, non-receipt of a mailed notice. It also ignores the practical reality that, in most cases, the addressee's denial of receipt will be the only available evidence of non-receipt.

an irrebuttable presumption, which is disfavored by both the United States and Pennsylvania Supreme Courts as violating due process. *Volk v. Unemployment Compensation Board of Review,* 49 A.3d 38, 42 (Pa. Cmwlth. 2012) (citing *Department of Transportation, Bureau of Driver Licensing v. Clayton*, 684 A.2d 1060, 1063 (Pa. 1996); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632 (1974); and *Bell v. Burson*, 402 U.S. 535 (1971)). Rare is the case that a claimant trying to rebut the mailbox rule will have a ready source of disinterested third-party corroboration, as was the case in *Donegal*.

Here, the Board expressly discredited Claimant's assertion of late receipt; therefore, Claimant failed to rebut the presumption of receipt in this case. Accordingly, I concur in the result.

_____
MARY HANNAH LEAVITT, President Judge

MHL-4